# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROAD SPRINKLER FITTERS LOCAL**
**UNION NO. 669, U.A., AFL-CIO,**

                      **CV. NO. 16-448-JWD-EWD**

**VERSUS**

                      **JUDGE JOHN W. deGRAVELLES**

**CCR FIRE PROTECTION, LLC,**
**AGENT OF QUICK RESPONSE FIRE**
**PROTECTION, LLC, ET AL.**

## RULING AND ORDER

## I.    INTRODUCTION

This matter is before the Court on three motions. The first is a Motion for Default Judgment against Defendant CCR Fire Protection, LLC ("CCR") pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2) filed by Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO ("Plaintiff" or "the Union"). (Docs. 106, 132). The Court held a hearing on this Motion on February 1, 2018. (Doc. 133). Following the hearing, Defendants Quick Response Fire Protection, Rajendra Bhakta, Nilesh Patel, Rosael Rodriguez, and Theresa Rodriguez filed Oppositions to the Motion for Default Judgment. (Docs. 142, 143, 144). Plaintiff filed a single Reply to these Oppositions. (Doc. 147).

The second motion before the Court is a Motion to Dismiss pursuant to Rule 12(b)(2) filed by Bhakta. (Doc. 116). The third motion is a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) filed by Patel. (Doc. 117). Plaintiff filed a single Opposition to both Motions to Dismiss. (Doc. 126). Bhakta and Patel both replied in further support of their Motions to Dismiss. (Docs. 134, 135).

For the reasons discussed below, these Motions are denied.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff brings this suit pursuant to the Labor Relations Management Act (the "Act"), 29 U.S.C. section 185(a), to enforce the terms of a settlement agreement and collective bargaining agreement. (Doc. 98 at 1). Named as Defendants are CCR; Quick Response; Rosael Rodriguez; Theresa Rodriguez; Patel; and Bhakta. (*Id.* at 2-3). All Defendants are alleged to be "employers" within the meaning of the Act. (*Id.*). Plaintiff alleges that Defendants who are natural persons are "employers" because this term includes a "person acting as an agent of an employer directly or indirectly[.]" (*Id.*).

CCR and Quick Response install, maintain, and repair fire sprinkler systems in Louisiana, Arkansas, and Mississippi. (*Id.* at 5). At all relevant times, Rosael Rodriguez was "an owner and agent" of CCR, and Theresa Rodriguez was its office manager. (*Id.*). Bhakta and Patel provided "the original capital investment" when CCR was initially founded, as well as "several additional financial investments thereafter." (*Id.* at 4). Bhakta and Patel signed CCR's original Articles of Incorporation and jointly held a "majority in interest," as defined in CCR's Operating Agreement. (*Id*; *see also* Doc. 98-2 at 1-2, 5). "At all material times, [Patel and Bhakta] collectively held a majority interest in [CCR] with vested authority to affirm and consent to the business decisions of CCR including entering into labor agreements." (Doc. 98 at 5). CCR's March 2017 annual report identifies Bhakta and Patel as "the only two corporate members" of CCR, and the report was signed electronically by Patel. (*Id.*; *see also* Doc. 98-3 at 1).

Plaintiff and the National Fire Sprinkler Association, Inc., a "national trade association employer representing contractors in the fire protection industry," have been parties to a series of national collective bargaining agreements, one of which was effective between 2013 and 2016. (Doc. 98 at 4). In May 2013, Plaintiff and CCR entered into a collective bargaining agreement

whereby CCR agreed to be bound by the terms of the national agreement with certain exceptions. (*Id.* at 4-5).

In August 2014, Plaintiff filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), claiming that CCR had violated the collective bargaining agreement. (*Id.* at 6). At the outset of the trial before the NLRB in February 2016, Plaintiff and CCR, "through [Rosael and Theresa Rodriguez]," engaged in settlement negotiations. (*Id.*). According to Plaintiff, Plaintiff and CCR entered into a settlement agreement "with the approval of majority owners Patel and Bhakta pursuant to the Operating Agreement." (*Id.*; *see also* Doc. 98-2 at 1-2). Also according to Plaintiff, the terms of the agreement included that "CCR would pay $450,000.00 over eight (8) years to [Plaintiff] and the National Automatic Sprinkler Industry fringe benefit funds ("NASI") along with a down payment to be agreed upon, payment of back-pay for the wrongfully terminated employee, confirmation of [Plaintiff's] status as the bargaining representative of the employees, an agreement to remain bound by the current and future CBAs and a notice to be mailed out to employees regarding the terms of settlement." (Doc. 98 at 6). In exchange, Plaintiff withdrew its charge. (*Id.*). CCR, "through" Theresa Rodriguez, "affirmed on the record" that it agreed to the terms of the settlement agreement, and the parties agreed to reduce its terms to writing. (*Id.* at 7). Thereafter, Plaintiff contends that CCR, "through" Rosael and Theresa Rodriguez, refused to sign the written agreement and "reneged" on their agreement to make payments. (*Id.*). Plaintiff's representatives attempted to contact CCR on several occasions, but their attempts were rebuffed. (*Id.*).

Plaintiff contends that, within a month of the settlement conference, CCR "reopen[ed]" as Quick Response, which performs the same work as CCR and generally retains CCR's employees, managers, and customers. (*Id.* at 7-8). According to Plaintiff, Quick Response is an alter ego of

and successor to CCR and is bound by the terms of the collective bargaining and settlement agreements described *supra*. (*Id.* at 8). Plaintiff further maintains that Rosael and Theresa Rodriguez, Patel, and Bhakta intended to evade their obligations to Plaintiff by purporting to enter into the settlement agreement with no intention of honoring it. (*Id.*).

## III.    PROCEDURAL HISTORY

This case was initially filed in July 2016. (*See generally* Doc. 1). Several Motions to Dismiss were filed. (Docs. 20, 21, 24). Among these Motions was a Rule 12(b)(2) Motion to Dismiss by Bhakta, which (like Bhakta's present Motion, discussed *infra*) argued that Bhakta's contacts with Louisiana were insufficient to give rise to personal jurisdiction. (Doc. 24-1 at 2-8). The Court granted this Motion, agreeing that Plaintiff had failed to establish that the Court had personal jurisdiction over Bhakta. (Doc. 78 at 2-3). The Court granted leave to amend to permit Plaintiff to provide factual allegations supporting jurisdiction over Bhakta. (*Id.* at 3). The Second Amended Complaint contains additional allegations concerning Bhakta's contacts with Louisiana, including that: (1) in addition to CCR, Bhakta and Patel own and operate eight businesses in and around Baton Rouge; (2) Bhakta has an office in Denham Springs, Louisiana, located in a hotel that he owns; (3) Bhakta's office address is the domicile address for CCR; (4) Bhakta engaged a Hammond, Louisiana accountant on CCR's behalf; and (5) for his Louisiana businesses, including CCR, Bhakta "files annual state income tax reporting business and personal income." (Doc. 98 at 3-4).

In August 2017, Plaintiff moved for the entry of default against CCR, contending that Plaintiff had effected service and CCR had not appeared. (Doc. 90-1 at 1-2). The Clerk of Court entered default the same day. (Doc. 91).

## IV.    GENERAL STANDARDS

The Motions before the Court are brought pursuant to Rules 55(b)(2), 12(b)(1), 12(b)(2), and 12(b)(6).  The Court addresses each standard in turn.

### a.  Rule 55(b)(2)

Another section of this Court has recently discussed the standards applicable to default judgments:

> The service of a summons triggers a duty to respond to a complaint and a failure to respond may result in the entry of default or default judgment under Federal Rule of Civil Procedure 55. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937–39 (5th Cir. 1999). When a party establishes by affidavit or some other method that there has been a default, the Clerk of Court will enter the default. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Once there has been an entry of default, the plaintiff may apply to the Court for a default judgment. *Id.*
>
> Default judgments are usually disfavored under the Federal Rules of Civil Procedure. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A default judgment is considered to be a drastic remedy that should only be available "when the adversary process has been halted because of an essentially unresponsive party." *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Therefore, a party is not entitled to a default judgment, even where the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
>
> In determining whether a default judgment should be entered, the Fifth Circuit has developed a two-part test. *Taylor v. City of Baton Rouge*, 39 F. Supp. 3d 807, 813 (M.D. La. 2014). First, the Court must determine whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Factors relevant to this determination include: (1) whether there are material issues of fact at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.* Second, the Court must assess the merits of Plaintiff's claims and find a viable claim for relief. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975).

*J&J Sports Prods., Inc. v. Boil & Roux Kitchen, LLC*, 2018 WL 1089267, at *1 (M.D. La. Feb. 27, 2018); *see also Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (entry of default judgment is "generally committed to the discretion of the district court").

### b. Rule 12(b)(1)

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

> Motions filed under Rule 12(b)(1) . . . allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).
>
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).
>
> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). [. . .]
>
> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### c. Rule 12(b)(2)

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d

465, 469 (5th Cir. 2006) (citing *Wyatt v. Laplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* ("Proof by preponderance of the evidence is not required."). However, in assessing whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *cf.* Fed. R. Civ. P. 12(d) (listing only motions under Rule 12(b)(6) and 12(c) as requiring conversion to summary judgment if evaluated on matters outside the pleadings).

### d. **Rule 12(b)(6)**

In *Johnson v. City of Shelby, Miss.,* —— U.S. ——, 135 S. Ct. 346 (2014), the Supreme Court explained that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (emphasis in *Lormand*)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)]; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* No. 10–00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff . . . To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff states a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

## V.    THE PARTIES' ARGUMENTS

### a.  The Motion for Default Judgment

In the Motion for Default Judgment, Plaintiff contends that the requirements for entry of a default judgment are met as to CCR.  Plaintiff claims that CCR was properly served and has not answered or appeared in this action, and it further notes that the Clerk has properly entered a default against CCR.  (Doc. 106 at 1; Doc. 106-1 at 6-7).  Plaintiff also reiterates the allegations of the Second Amended Complaint and argues that they provide a sufficient basis for a finding in Plaintiff's favor against CCR.  (Doc. 106-1 at 7-9).  In a footnote, Plaintiff argues that, although entry of a default judgment is improper where *joint* liability is alleged against multiple defendants, Plaintiff alleges *joint and several* liability in this case.  (Doc. 106-1 at 3).

Attached to this Motion are an affidavit of Paula M. Bruner, local counsel for Plaintiff, discussing Plaintiff's attempts to serve CCR.  (Doc. 106-2 at 1-3).  Also attached is a declaration by William Osborne, Jr., also Plaintiff's attorney, concerning the proceedings before the NLRB. (Doc. 106-3 at 1-2).  A transcript of the deposition of Natalie Moffett, a lawyer for Plaintiff who was present for the NLRB proceedings, was also submitted in support of the Motion.  (*See* Doc. 132 at 4).

Following oral argument on February 1, 2018, the parties filed additional briefing concerning their positions.  Quick Response opposes, first arguing that it has standing to oppose the Motion because Plaintiff has alleged joint and several liability against a non-appearing co-

defendant.  (Doc. 142 at 2-3 (citing *Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* 2014 WL 1120792, at *3-*4 (W.D. La. Mar. 19, 2014)).  Next, Quick Response maintains that the Court is not *required* to enter a default judgment, and in this case a default judgment against CCR may ultimately be inconsistent with a judgment subsequently entered against another Defendant.  (*Id.* at 3-5).  Quick Response also argues that, under the six "*Lindsey* factors" discussed *supra*, a default judgment would be improper.  (*Id.* at 5).  In particular, Quick Response argues that a factual dispute is central to this case, the denial of the Motion will not substantially prejudice Plaintiff, entry of a default judgment may invite Plaintiff to use that judgment in service of the "harsh result" of establishing offensive collateral estoppel against the remaining Defendants, and the Court would likely have to set aside a default judgment on the motion of another Defendant.  (Doc. 142 at 5-10).  The "factual dispute" alleged by Plaintiff is whether there was a "meeting of the minds" concerning the settlement agreement and whether it was conditioned on IRS approval.  (*Id.* at 5-7).

Patel and Bhakta also oppose, first making many of the same arguments as Quick Response concerning the discretionary nature of default judgments and their standing to oppose.  (Doc. 143 at 2-4).  Patel and Bhakta also contend that entry of a default judgment is only appropriate where the complaint establishes that the plaintiff is entitled to relief, and the Second Amended Complaint fails to do so.  (*Id.* at 4-6).  They argue that the Second Amended Complaint does not "state that CCR did, in fact, sign and execute the purported settlement agreement" and that, according to the deposition testimony of Rosael and Theresa Rodriguez, the agreement was conditioned on the IRS approving its terms.  (*Id.*; *see also* Docs. 143-1, 143-2).

Rosael and Theresa Rodriguez also oppose, similarly arguing that they have standing to oppose and that there is evidence showing that the settlement was conditioned on IRS approval. (Doc. 144 at 2-9).

In reply, Plaintiff contends first that Patel and Bhakta cannot "have it both ways" by failing to respond to pleadings against CCR, even though they are its "majority owners," but also oppose entry of default judgment against CCR. (Doc. 147 at 1-3). Next, Plaintiff argues that Defendants other than CCR lack standing to challenge the validity of the settlement agreement, as they were not parties to it and have repeatedly denied affiliation with the settlement agreement. (*Id.* at 3-4). Plaintiff argues that *Diamond Servs. Corp.* was "analytically mistaken" and again distinguishes between cases alleging joint liability, where default judgment generally should not be entered against one defendant, and cases like this one alleging joint and several liability, where entry of default judgment against a single defaulting defendant is appropriate. (*Id.* at 5-8). Finally, Plaintiff contends that the Second Amended Complaint states a valid, viable claim against CCR. (*Id.* at 8-13).

### b. The Motions to Dismiss

Bhakta's Motion to Dismiss contends that, notwithstanding the additional allegations in the Second Amended Complaint, Plaintiff still fails to establish this Court's personal jurisdiction over him. (Doc. 116-1 at 5-10). Bhakta, a Tennessee resident, contends that his contacts with Louisiana do not give rise to general jurisdiction, and the contacts with Louisiana described in the Second Amended Complaint are not sufficient to give rise to specific personal jurisdiction with respect to the claims in the Second Amended Complaint. (*Id.*).

Patel's Motion to Dismiss first contends that he is not an "employer" under the Act, and the Court therefore lacks subject matter jurisdiction for failure to present a federal question. (Doc.

117-1 at 4-8).  Patel also argues that the Second Amended Complaint fails to state a claim because it does not adequately allege that Patel was a signatory to the collective bargaining or settlement agreements or that he "exercised policy-making functions or possessed any control over CCR's internal affairs."  (*Id.* at 7-11).  Patel acknowledges his "initial capital contribution" to CCR but contends that Plaintiff has not cited any cases stating that an investment alone, combined with "totally passive involvement in the company's internal functioning," can give rise to personal liability.  (*Id.* at 8).

Plaintiff opposes both Motions via a single Opposition, arguing first that Patel was "fully involved" in settlement negotiations, as discovery in this case has established, and Patel's arguments to the contrary are false.  (Doc. 126 at 1-2).  Plaintiff contends that deposition testimony has also established that Rosael and Theresa Rodriguez had "no legal authority" to agree to a settlement unless Patel and Bhakta approved it.  (*Id.* at 3-4).  Plaintiff also argues that the Act's definition of "employer" includes any person "acting as an agent of an employer, directly or indirectly," encompassing Patel's alleged conduct.  (*Id.* at 4-5).  Finally, Plaintiff contends that Patel is liable for breaching the settlement agreement as alleged in the Second Amended Complaint (*Id.* at 6-8).

In reply, Bhakta argues that Plaintiff seeks to hold him liable "simply by virtue of his status as an LLC member of CCR" and based on the alleged settlement agreement, which Bhakta neither "signed nor participated in."  (Doc. 134 at 2).  Bhakta also notes that the Opposition "barely mentions Bhakta at all and does not conduct even a surface level analysis of the personal jurisdiction question."  (*Id.* at 1).  Patel generally reemphasizes his claimed non-participation in the settlement negotiations, citing his own deposition testimony to that effect, and argues that the

settlement agreement could only bind CCR, not Patel individually. (Doc. 135 at 1-3). Patel also

again emphasizes that there was no settlement agreement between Plaintiff and him. (*Id.* at 4-6).

## VI.  DISCUSSION

### a.  The Motion for Default Judgment

As the Court discussed *supra*, default judgments are "disfavored" and a "drastic remedy,"

to be used only when "the adversary process has been halted because of an essentially unresponsive

party." *J&J Sports Prods., Inc.*, 2018 WL 1089267, at *1. Even where a defendant is technically

in default, a party is not entitled to a default judgment. *Id.*

In addition to these general principles, this case implicates the appropriateness of entering

a default judgment when there are multiple defendants.   According to a leading treatise, as a

general rule, "when one of several defendants who is alleged to be jointly liable defaults, judgment

should not be entered against that defendant until the matter has been adjudicated with regard to

all defendants[.]" 10A Fed. Prac. & Proc. Civ. § 2690 (4th ed.). The treatise also characterizes

the rule as applying "when the liability is joint and several," and it further states that the rule

"probably can be extended to situations in which joint liability is not at issue but several defendants

have closely related defenses." *Id.* As a federal court in Texas has stated:

> [W]hen default is entered against one defendant in a multi-defendant case, a court
> may prefer to withhold granting a default judgment until a decision on the merits
> against the remaining defendants has been entered. *Essex Ins. Co. v. Clark*, 3:09-
> cv-1196-B (citing *Raleigh Cycle Co. of Am. v. Edward Risha*, No. H-84-522, 1987
> WL 11889, at *1 (S.D. Tex. May 27, 1987)). This is especially true where, as here,
> a default judgment against one of multiple defendants could result in inconsistent
> or illogical judgments. *Id.*

*Metropcs v. PC-Wiz Corp*, 2017 WL 131696, at *6 (N.D. Tex. Jan. 13, 2017); *see also Allstate*

*Prop. v. Donald*, 2017 WL 5653874, at *2–*3 (S.D. Miss. Mar. 16, 2017) (citing *Metropcs* for this

proposition and observing that courts have extended this reasoning to situations where several defendants have "related defenses").

In *Hunt v. Inter-Globe Energy, Inc.*, the Tenth Circuit considered whether this general rule applies where multiple defendants are alleged to be jointly and severally liable. 770 F.2d 145, 147 (10th Cir. 1985). The Tenth Circuit reversed and remanded a default judgment, ruling that, "as consistent verdict determinations are essential among joint tortfeasors, consistent damage awards on the same claim are essential among joint and several tortfeasors," and the district court had entered judgment against a defaulting defendant in a greater amount than was ultimately awarded against an appearing defendant. *Id.* at 146, 148.

The Seventh Circuit addressed this distinction in *In re Uranium Antitrust Litig.*, ruling that, when different results as to different parties would not be "logically inconsistent or contradictory," the rationale for the rule applicable to joint liability was lacking. 617 F.2d 1248 (7th Cir. 1980).

The foregoing authorities do not provide a clear answer concerning entry of default judgment in multi-defendant cases alleging joint and several liability. The issue may not be amenable to categorical decision: the likelihood of inconsistent judgments where joint and several liability is alleged will vary with the specific facts and issues presented in a particular case.

However, there is an emphatically clear answer as to the appropriate course of action when it is at all uncertain whether a default judgment should be entered. Again, default judgment is a drastic and disfavored remedy to which a party is never "entitled," and it should generally be used only when "the adversary process has been halted because of an essentially unresponsive party." *J&J Sports Prods., Inc.*, 2018 WL 1089267, at *1. Here, this case is being ably litigated by the appearing parties, and it is wholly unclear that any prejudice would result from not entering a default judgment. Notwithstanding whether Defendants other than CCR have standing to formally

oppose entry of a default judgment, the Court cannot conclude that the entry of default judgment is appropriate under the circumstances. *See Lindsey*, 161 F.3d at 893. The Motion for Default Judgment will therefore be denied.

### b. The Motions to Dismiss

### i. Patel's Motion

Preliminarily, although a portion of Patel's Motion to Dismiss is brought pursuant to Rule 12(b)(1), the Court concludes that the challenge is properly brought under Rule 12(b)(6). As the Northern District of Mississippi has discussed:

> [M]otions under Rule 12(b)(1) should not be confused with those under Rule 12(b)(6) for failure to state a claim. Rule 12(b)(1) motions involve the determination of whether a plaintiff has a right to be before the particular court; whereas, Rule 12(b)(6) motions involve adjudication upon whether a cognizable legal claim has been stated. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, *i.e.,* the court's statutory or constitutional power to adjudicate the case."); *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (though a failure to state a claim may call for a judgment on the merits, no merits determination, other than whether a federal claim [sic] is frivolous or insubstantial, is pertinent to whether the court possesses jurisdiction over the subject matter); *Lewis v. Knutson,* 699 F.2d 230 (5th Cir. 1983) (if an attack on the face of the complaint defeats jurisdiction, then the case should be dismissed under Rule 12(b)(1); however, if the case survives a facial attack, the failure to state a cognizable claim should be disposed of by a Rule 12(b)(6) motion on the merits); *Williamson v. Tucker,* 645 F.2d 404 (5th Cir. 1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (when the movant's challenge to jurisdiction also challenges the existence of a federal cause of action, the appropriate procedure for the court is to deal with the attack as one on the merits—assuming the claim is not immaterial or frivolous or made for the sole purpose of securing federal jurisdiction).

> Stated differently, if deciding upon a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction mandates a decision upon the core merits of the case, said decision should await determination under Rule 56. *Clark v. Tarrant County, Texas,* 798 F.2d 736 (5th Cir. 1986).

*Linn v. United States*, 2005 WL 1876876, at *4–5 (N.D. Miss. Aug. 8, 2005), *aff'd on other grounds,* 281 F. App'x 339 (5th Cir. 2008).

Here, Plaintiff's claims are clearly alleged under the Act, which is a federal statute. Patel's Rule 12(b)(1) challenge principally disputes whether Plaintiff adequately alleges that Patel falls within the Act's definition of "employer." (Doc. 117-1 at 5). Patel acknowledges, however, that this term is intended to include individuals who possess "a right or power to control the enterprise's conduct as to have a responsibility for its labor affairs and relations." (*Id.* at 6). Because Patel's challenge is directed primarily at the sufficiency of Plaintiff's allegations in support of what is clearly a federal question, it is most appropriately considered under Rule 12(b)(6).

Considering only the allegations of the Second Amended Complaint and its attached exhibits, as the Court must do on review under Rule 12(b)(6), the Court cannot conclude that Plaintiff has failed to state a claim. The Second Amended Complaint alleges that Patel and Bhakta had control over all "decisions and actions" of CCR, attaching CCR's Operating Agreement in support, and alleges that these individuals had some involvement in overseeing CCR's decisions. (Doc. 98 at 3-5). Patel again argues that these allegations are insufficient to show that he is an "employer" under the Act. (*See* Doc. 117-1 at 7, 9 (Plaintiff's allegations fail "without any indication that Patel exercised policy-making functions or possessed any control over CCR's internal affairs[.] [. . .] To hold the Defendant liable, this Court would have to conclude that [Patel] is individually considered an employer under the [Act].")). Rule 12(b)(6) is a low bar, however: it requires only that a complaint contain enough factual matter to raise a reasonable hope or expectation that discovery will reveal relevant evidence, it does not impose a probability requirement at the pleading stage, and the Court need only be able to draw a "reasonable inference" of liability from its allegations. *Lormand,* 565 F.3d at 257; *Thompson,* 764 F.3d at 502-03. As set

forth *supra*, Patel acknowledges that the term "employer" includes individuals who possess "a right or power to control the enterprise's conduct as to have a responsibility for its labor affairs and relations." (Doc. 117-1 at 6). While the allegations in the Second Amended Complaint may not be extremely detailed, the Court believes that they suffice to meet the standards of Rule 12(b)(6).

The Court also notes that Patel and Bhakta have filed a Motion for Summary Judgment raising many of the same issues raised in Patel's Motion to Dismiss, including whether he is an "employer" under the Act. (*See* Doc. 156). Considering that the parties have already undertaken discovery and Patel has already filed a Motion for Summary Judgment, the Court sees little reason to decide this issue on the face of the Second Amended Complaint via Motion to Dismiss rather than on the more complete record available in connection with a Motion for Summary Judgment.

For the foregoing reasons, Patel's Motion to Dismiss will be denied.

### ii. Bhakta's Motion

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.,* 517 F.3d 235, 242 (5th Cir. 2008). Louisiana's long-arm statute "authorizes the exercise of personal jurisdiction to the limits of due process." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.,* 615 F.3d 364, 367 (5th Cir. 2010); *see also* La. Rev. Stat. § 13:3201(B). "The exercise of personal jurisdiction can thus be maintained if the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 716 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)), "and if the exercise of jurisdiction over the nonresident defendant does not offend

'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113 (1987)).

Personal jurisdiction may be general or specific. Where a nonresident defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), the court may exercise "general" jurisdiction over any action brought against the defendant. *Id.* at 414 n.9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8.

In its prior Ruling on Bhakta's original Motion to Dismiss, the Court determined that Plaintiff's allegations concerning specific personal jurisdiction, supplemented by materials in the record, were insufficient. (Doc. 78 at 1-3). Notably, in evaluating that Motion, the Court considered evidence that Bhakta held "one-half of the majority interest in CCR" and therefore was generally required to "personally approve major decisions within CCR." (*Id.* at 2). Plaintiff's current arguments in support of specific personal jurisdiction are substantially similar to those previously rejected by the Court. (*See* Doc. 126 at 1-4 (Rosael and Theresa Rodriguez had no authority to approve settlement "unless and until Patel and Bhakta had approved its terms"; Patel was "prime mover" in overseeing CCR's operations, but, under Operating Agreement, both Patel and Bhakta had "equal authority and therefore equal liability for the decision to violate the settlement"). The Court's analysis concerning this issue is thus basically unchanged: Plaintiff has pointed the Court to no evidence or plausible allegations that Bhakta had "any personal involvement in the breach of contract that gave rise to the instant action[.]" (Doc. 78 at 3). The sole remaining question is whether Plaintiff's allegations will support an exercise of general jurisdiction.

Bhakta contends that, because Plaintiff acknowledged that Bhakta "is indeed a resident of Tennessee, it follows accordingly that for purposes of general jurisdiction, Plaintiff [sic] is not considered 'at home' in Louisiana; accordingly, there is no need to delve into a general jurisdiction analysis herein."   (Doc. 116-1 at 6).   Bhakta is incorrect, however: the very purpose of the "continuous and systematic" test is to evaluate whether a *non-resident* defendant is *essentially* at home in the forum state.  *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) ("A court may assert general jurisdiction over non-resident defendants to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." (quotation marks and alteration omitted)); *see also Higdon v. Cannon*, 2012 WL 424965, at *6 (E.D. Tenn. Feb. 9, 2012) ("Defendants assume Plaintiffs rely on a specific jurisdiction theory, and thus do not address in their motion whether personal jurisdiction over Defendants is proper on a general jurisdiction theory. Although Plaintiffs have not advanced arguments in support of general jurisdiction, the Court nonetheless considers whether personal jurisdiction is proper on this basis.").  Courts in the Fifth Circuit have applied this test to individuals.  *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) (applying general jurisdiction test to nonresident individual); *Serv. Steel Warehouse, Co., L.P. v. Eakin*, 2011 WL 3439132, at *2 (M.D. La. Aug. 5, 2011) (same); *see also Burnham v. Superior Court of California, Cty. of Marin*, 495 U.S. 604, 610 (1990) (stating that "it may be" that the "continuous and systematic contacts" test applies only to corporations, but ultimately "express[ing] no views on [this] matter")

The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.,* 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted). "[E]ven repeated contacts with forum residents

by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction[.]" *Revell v. Lidov,* 317 F.3d 467, 471 (5th Cir. 2002) (citations omitted). However, general jurisdiction is present where a defendant has a "business presence" in the forum state. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (no personal jurisdiction where defendant had no office, bank accounts, employees, or postal address in Louisiana; had never owned or leased any property in Louisiana; and had never been registered to do business or paid taxes in Louisiana); *see also In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 767 F. Supp. 2d 649, 661 (E.D. La. 2011) (listing similar factors as relevant to the "general jurisdiction" inquiry); *Holt*, 801 F.2d at 779 (individual attended college and was formerly employed in Texas, owned real estate in Texas, travelled to Texas repeatedly for recreation and to visit family, and had transacted a "great deal" of business in Texas; none of these contacts standing alone gave rise to general jurisdiction, but general jurisdiction existed when contacts were considered "*in toto*").

The Second Amended Complaint alleges that (1) in addition to CCR, Bhakta and Patel own and operate eight businesses in and around Baton Rouge; (2) Bhakta has an office in Denham Springs, Louisiana, located in a hotel that he owns; (3) Bhakta's office address is the domicile address for CCR; (4) Bhakta engaged a Hammond, Louisiana accountant on CCR's behalf; and (5) for his Louisiana businesses, including CCR, Bhakta "files annual state income tax reporting business and personal income." (Doc. 98 at 3-4). As a factual matter, Bhakta takes issue with the allegations concerning the Denham Springs office address, suggesting that CCR's Operating Agreement shows that CCR maintains this address as its principal place of business and, therefore, only CCR may be "haled into court" by virtue of that office. (Doc. 116-1 at 7). Bhakta similarly

argues that filings with the Louisiana Secretary of State clearly show that Bhakta's address is in Tennessee and is not "the domicile address for CCR[.]" (*Id.*).

Attached as exhibits to the Second Amended Complaint are printouts from the Louisiana Secretary of State's website concerning the operating status and corporate membership of CCR and eight other Louisiana businesses. (*See generally* Doc. 98-1). On CCR's page, as well as six other pages, Bhakta's address of record is in Tennessee. (*Id.* at 1-2, 4, 6, 9, 12, 14-15, 16-17). On two others, Bhakta's address of record as a "registered agent" or "officer" is in Denham Springs, Louisiana. (*Id.* at 7, 11). The site permits the listing of limited liability companies as "registered agents" or "officers" of other entities. (*See id.* at 5-6, 11).

Under the relatively low evidentiary requirements applicable at this stage, Plaintiff has made a prima facie showing of general jurisdiction over Bhakta. *Johnston*, 523 F.3d at 609. While the "continuous and systematic contacts" test is generally difficult to meet, *Submersible Sys., Inc.,* 249 F.3d at 419, the standard can be met where a defendant has a "business presence" in the forum state. *Jackson*, 615 F.3d at 584. The evidence and allegations here suggest that Bhakta, in his own name and not only through CCR, is an officer of or registered agent for numerous Louisiana businesses, maintains an office for transacting business in Louisiana, and pays taxes in Louisiana. The fact that CCR also uses the Denham Springs address does not foreclose the possibility that Bhakta uses the same address in connection with his general "business presence" in Louisiana. *See Serv. Steel Warehouse, Co., L.P.*, 2011 WL 3439132, at *2 (general jurisdiction present, notwithstanding fiduciary shield doctrine, where defendant maintained residence in Louisiana until 2003, paid Louisiana income taxes, registered a vehicle in the state, and served as the director, member, officer, and/or agent for numerous other Louisiana businesses); *see also Holt*, 801 F.2d at 779 ("Moreover, we note that the instant controversy arises out of one of Harvey's business

contacts with Texas. While that contact was not sufficient to support an exercise of specific jurisdiction, the fact that some connection exists between Harvey, the forum, and the controversy involved in the instant case is nevertheless relevant to our determination."). The foregoing facts support a prima facie showing that Bhakta has purposefully availed himself of the benefits and protections associated with doing business in Louisiana and that exercising jurisdiction will not offend traditional notions of fair play and substantial justice. *Access Telecom, Inc.,* 197 F.3d at 716. Therefore, Bhakta's Motion to Dismiss will be denied.

## VII.    CONCLUSION

Accordingly, **IT IS ORDERED** that the Motions for Default Judgment and to Dismiss, (Docs. 106, 116, 117), are **DENIED**.

Signed in Baton Rouge, Louisiana, on June 21, 2018.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**